UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LEAR SIEGLER SERVICES, INC.   ) | |
| ) | |
|     Plaintiff,   ) | |
| ) | |
| VS.   ) | Civil Action No.  SA-05-CA-679-XR |
| ) | |
| ENSIL INTERNATIONAL CORP.   ) | |
| ) | |
|     Defendant.   ) | |
| ) | |
| ) | |

**ORDER**

On April 17, 2008, after three days of trial, a jury reached a verdict in favor of Plaintiff on all questions of liability submitted to it, awarding Plaintiff $1,169,069 in damages. Subsequent to this verdict, Defendant filed a Motion for Judgment as a Matter of Law (Docket No. 79), arguing that, notwithstanding the jury's decision, the Court should enter Judgment in Defendant's favor. Having considered the briefings of the parties coupled with the relevant case law, the Court DENIES Defendant's motion.

**Analysis**

Standard of Review

"A court should not grant a judgment n.o.v. unless the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men and women could not have arrived at a contrary verdict."[1]

---

[1] Winter v. Brenner Tank, Inc., 926 F.2d 468, 473 (5th Cir. 1991).

Breach of Express Warranties

Defendant contends that Maryland law applies to this case because of a forum selection clause contained in B-12 of the Terms and Conditions of Purchase. Building from there, Defendant cites to several Maryland state court decisions to support its argument that Plaintiff cannot prevail on its breach of express warranty claims because it did not prove that the repair items in question were defective at the time they left Defendant.

Defendant's cases are readily distinguishable, however, from the present one. Unlike those cases, in which the complainants averred warranty claims arising from defective parts that existed at the time of purchase or from a failure to replace defective parts, the Plaintiff in this case alleges that irrespective of whether the items submitted for re-repair were defective, Defendant possessed a warranty obligation to reinspect the items once an allegation of defect had been asserted.

If Plaintiff were asserting that Defendant breached the agreement because the items were in fact defective, Defendant's cited cases might have been relevant. To extend the holdings from those cases to the facts of this one, however, would effectively result in reducing two distinct possible claims into one and would permit Defendant to violate its express reinspection obligations without affording Plaintiff a legal remedy to obtain relief. In other words, a failure to reinspect and to maintain proper maintenance records in accordance with an express warranty would not be actionable unless Plaintiff proved that the items at issue were defective because of actions or inactions taken by Defendant. The cases cited by Defendant do not suggest, much less require, such a result.

The question is not whether Plaintiff proved the items were defective when they left Defendant, but rather, whether Defendant showed that it at least reinspected the items when they were returned to it with alleged defects. Even if the allegations of defect proved to be incorrect, Ensil had an express

warranty obligation to at least perform basic diagnostic testing to assess the items' status and determine whether they deserved further warranty treatment. For 67 of the 75 items in dispute in this case, Ensil failed to meet this minimal warranty requirement.

The requirement itself can be found in B-18(c) of the Terms and Conditions of Purchase that applied to each contracted for repair item. That provision reads:

> Seller must take positive corrective action to prevent continued shipment of material identified as nonconforming by Lear Siegler Services, Inc., whether such material has been returned to Seller by Lear Siegler Services, Inc., or retained "As is" by Lear Siegler Services, Inc. Seller shall determine the root cause of the problem and shall make necessary changes and make such documentation available for review by Lear Siegler Services, Inc. If Corrective Action cannot be taken by Seller, Seller must notify Lear Siegler Services, Inc., of his inability to correct the problem and the reason why he cannot take Corrective Action.

This language makes clear that at a minimum, Ensil expressly assumed the obligation to inspect allegedly defective returned items and maintain inspection documentation for review by Lear Siegler. At trial, however, evidence was presented to the jury that Ensil failed to satisfy these obligations, thus breaching its express warranty duties to Lear Siegler.

The Court finds instructive Lear Siegler's analogy of the individual who takes his car to a repair shop. In the analogy, the repair shop warrants its work for a defined period of time and promises to keep accurate documentation of all repair work done on the vehicle. The repair shop further warrants that if problems allegedly arise after it has performed its work, it will conduct a reinspection to assess whether the problems do in fact exist, and if so, whether they are covered by the warranty.

After the initial repairs are purportedly made, but within the time frame provided by the warranty, the individual discovers that his car is still having problems. He takes it back to the repair shop for a reinspection and determination of whether the current problems are covered by the warranty. It is clear from this example that the car repair shop would be in breach of its warranty duties if it

refused to reinspect the car or provide documentation of its inspections until such time as the individual could independently confirm the cause of the problems and trace them back to the work done by the repair shop. Likewise, Ensil's argument that Lear had to first prove that Ensil failed to properly repair the items before its duty to reinspect those items would be activated under the contractual agreement defies both the express terms of the warranty and basic common sense.

Ensil attempts to maneuver around this requirement by alleging that unlike in the car repair shop analogy, Lear Siegler was not the party complaining of the defects. Ensil contends that the foreign government end users filled that role, but they were not present at trial to testify to the defects that they asserted existed.

Defendant's attempted distinction is without legal import to the express warranty claims averred by Plaintiff. The express warranty obligations existed contractually between Lear Siegler and Ensil. Regardless of whether the third party end users were correct in their allegations of defects, Ensil possessed a clear contractual obligation to Lear Siegler to at least perform an inspection of the returned items to identify their condition, and if defects were found, to determine whether they were covered by the warranty for further repair work. Based on the evidence presented in this case, a reasonable jury could find that Defendant breached this duty.

Eight CIT Units

As to the eight CIT units in this case, a fact issue existed as to whether Defendant performed proper repairs on them. Evidence was introduced to the jury that 1) the findings of outside repair technicians cast doubt on Ensil's explanations of what caused the defects in these items, 2) Ensil was unable to identify which of its technicians purportedly repaired the items, and 3) Ensil lacked sufficient documentary evidence to support its position that it properly repaired, tested, or inspected the items.

Given this evidence, Defendant has failed to meet its burden of showing that a reasonable jury could not have reached the conclusion that Ensil either failed to repair the eight CIT units, or if it attempted repairs, that those attempts were unsuccessful.

Length of Express Warranties

Defendant argues that the express warranty agreements between it and Plaintiff were for six months only, not for a year as Plaintiff contends and as the jury apparently found. Therefore, for those items concerning which Ensil first received notice of alleged defects more than six months after the initial repairs had been performed, Ensil contends it cannot have breached its warranty obligations.

This issue is not a new one to the Court. The Court addressed it in its December 17, 2007 summary judgment order, finding that a one-year warranty existed for the 33 items then before it.[2] The Court stands by the reasoning articulated in that order. While at trial both sides presented testimony on the length of the express warranties, the Court did not find the testimony in favor of an alleged six month warranty to be so overwhelming as to preclude a reasonable jury from weighing the facts in favor of a different conclusion.

## Conclusion

The Court finds Defendant has not met its post-trial burden of evincing that "the facts and inferences point so strongly and overwhelmingly in favor of one party that reasonable men and women could not have arrived" at the verdict which was reached.[3] Accordingly, Defendant's Motion for Judgment as a Matter of Law is DENIED.

---

[2] *See* Docket No. 41 at 4-6.

[3] *Winter*, 926 F.2d at 473.

It is so ORDERED.

SIGNED this 3rd day of June, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE