# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LEAR SIEGLER SERVICES, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-05-CV-679-XR |
| | § | |
| ENSIL INTERNATIONAL CORP., | § | |
| *Defendant*. | § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

On this day the Court considered Plaintiff's motion for summary judgment (Docket Entry No. 102), Defendant's motion for summary judgment (Docket Entry No. 101), and the parties' responses and replies thereto. After due consideration of the arguments, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment..

## Background

Plaintiff Lear Seigler Services, Inc. ("LSI") serves as a government contractor that administers the Parts Requisition Order System ("PROS-II") contractor program for the United States Government. The PROS-II program allows foreign militaries to obtain spare parts and repairs from private United States repair facilities. After receiving from foreign countries requests for military equipment repairs, LSI posts the requests on a secured-access website where pre-approved vendors can place bids for repair contracts. LSI awarded contracts for the repair of avionics and electronics equipment to one such bidder, Defendant Ensil International Corp. ("Ensil").

Under the PROS-II program, once a vendor makes a repair, the corrected product is forwarded to the foreign military end-user. If the equipment is determined by the end-user not to have been satisfactorily repaired, a Supply Discrepancy Report ("SDR") is generated and submitted

to the United States Air Force, who forwards it to Lear. After receiving the SDR, Lear notifies the subcontractor. The items in dispute in this case were purportedly repaired by Ensil and sent to the foreign government end-users, who subsequently reported defects with the products they received. The products were then sent back to Ensil for inspection, a determination of whether they were still under Ensil's warranty, and as necessary, repair.

## Procedural History

LSI filed suit against Ensil for fraud, breach of warranty, and breach of contract in Texas state court, which Ensil removed to this Court. The Court granted partial summary judgment for LSI with respect to thirty-three items for which Ensil had been awarded contracts for repairs, reserving the issue of damages for trial. (Order (Dec. 17, 2007) [Docket Entry No. 41].) The case was tried to a jury in April 2008, with the jury returning a verdict in favor of Plaintiff LSI on questions of liability. (Verdict Form (April 17, 2008) [Docket Entry No. 78].) The jury awarded LSI $433,777 for Ensil's breach of the thirty-three contracts subject to the partial summary judgment, $528,650 for Ensil's breach of contracts for the repair of eight specific units, and $206,642 for Ensil's breach of the thirty-four remaining contracts. (*Id.*) On December 5, 2008, this Court granted Defendant Ensil's motion for a new trial as to damages for the sixty-seven contracts of repair but not to the eight specified units. (Order (Dec. 5, 2008) [Docket Entry No. 96].) The Court stated that LSI suffered no out-of-pocket loss as a result of Ensil's actions because the United States Government reimbursed LSI for the amounts paid to Ensil for the repair contracts. (*Id.* at 10–15.) This is the remaining issue in this case.

**Standard of Review**

In considering a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must draw reasonable inferences and construe evidence in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

A summary judgment movant must show by affidavit or other evidence that there is no genuine issue regarding any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the nonmoving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

In order for a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson*, 477 U.S. at 250 n.4. In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well

as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses" and disregarding the evidence favorable to the nonmovant that the jury is not required to believe. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 152, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

**Analysis**

*LSI's Motion for Summary Judgment*

In its motion for summary judgment, LSI argues that the United States Government authorized it to assert the claims for EIG's breaches of contract and "is required to turn over any amounts collected to the government." (Pl.'s Mot. for Summ. J. at 5 (Sept. 8, 2009) [Docket Entry No. 102] ("Pl.'s Mot.").) LSI states that the evidence presented in its motion "establishes that LSI was acting under the authority of the [United States Government] and is required to turn over any money collected to the [United States Government]. (*Id.* at 5–6.) Citing the Supreme Court's opinion in *Sprint Communications v. APCC Services, Inc.*, 128 S.Ct. 2531, 2533, 171 L.Ed. 2d 424 (2008), Plaintiff argues that it has standing to pursue the claim even though it will reimburse damages to the United States Government. (*Id.* at 6.) Furthermore, LSI likens this scenario to that of *qui tam* actions in which a *qui tam* relator possesses standing to bring a suit to remedy the injury suffered by the United States, rather than the private party. (*Id.* at 7.)

In its complaint against Ensil, LSI brought claims for breach of contract and breach of warranty. (*See* Pl.'s Original Pet. at 2–3 (June 7, 2005) (Def.'s Notice of Removal ex. 1 (July 21, 2005) [Docket Entry No. 1]) ("Compl.").) A claim for breach of contract requires that the party asserting the claim establish the following elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant;

4

and (4) *damages sustained by the plaintiff as a result of the breach.*" *Valero Mktg. & Supply Co. v. Kalama*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (emphasis added). Moreover, a claim for breach of warranty requires that "the plaintiff suffered injury." *Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex. App.—Dallas 2007, no pet.). LSI filed suit for recovery of "its actual damages . . . ." (Compl. at 3.)

In its motion for summary judgment, LSI contains the declaration of Halbert F. Taylor, Deputy Program Manager for Logistics at LSI. Mr. Taylor describes the PROS II program, the procedure if a vendor has failed to repair an item properly, attests to the accuracy of the Supply Discrepancy Reports (SDR), and the amounts paid to Ensil. (Dec. of Halbert F. Taylor, Jr. (Aug. 31, 2009) (Pl.'s Mot. ex. A).) Mr. Taylor further states that "[t]he United States Government requires, and LSI has agreed, to turn over any amounts collected from Ensil to the government." (*Id.* ¶ 10.) Plaintiff does not provide, nor does Mr. Taylor state, the basis upon which he makes this statement. Moreover, none of the exhibits associated with Mr. Taylor's Declaration support his contention. Consequently, Mr. Taylor's declaration does not establish that LSI must turn over any amounts collected from Ensil to the government.

LSI also includes a declaration from Stephen J. Sobieski, Chief of Contracts for the Department of the Air Force. (Dec. of Stephen J. Sobieski (Aug. 28, 2009) (Pl.'s Mot. ex. B).) In his declaration, he attests to the accuracy of a memorandum memorializing discussions between the Government and LSI. (*Id.*) That memorandum reads that the Government agrees that LSI "is authorized to bring legal and other enforcement actions against any of its subcontractors or vendors where the [U.S. Government] has paid LSI for supplies or repairs . . . ." (Mem. from Stephen J. Sobieski to Lear Siegler Logistics International, Inc. (Aug. 7, 2009) (Pl.'s Mot. ex. B1) (Mem.).)

The letter further states that LSI shall remit "any damage amounts recovered from LSI and subcontractors" to the Government. (*Id.*) It is unclear to what extent this memorandum has any binding effect on the parties. In fact, the letter does not even declare that the PROS-II contract imposes a contractual obligation to remit funds. Consequently, Plaintiff has failed to establish sufficient evidence to warrant summary judgment. Clear questions of fact remain as to whether LSI suffered actual damages based on the evidence provided.

LSI argues that it has standing to bring claims and recover damages that will be turned over the United States Government, relying on *Sprint Communications v. APCC Services, Inc.*, for the proposition that "an assignee who holds legal title to an injured party's claim has constitutional standing to pursue the claim, even if the assignee has agreed to remit all proceeds from the litigation to the assignor." (Pl.'s Mot. at 6.) *Sprint Communications* involved claims by third-party assignees, called "aggregators," who acquired the claims of telephone operators against long-distance carriers that had allegedly failed to compensate the telephone operators for connecting the long-distance calls of payphone customers. 128 S.Ct. at 2534. As part of the agreement, the aggregator promised to remit to the relevant payphone operator (*i.e.*, the assignor of the claim) any compensation that is recovered via the suit or settlement. *Id.* The Supreme Court held that the aggregators had standing to pursue the claim even though they did not "themselves suffer[] any injury in fact . . . ." *Id.* at 2542.

Plaintiff cannot rely on *Sprint Communications* to establish its case for actual damages. *Sprint Communications* involves a challenge to the standing of the assignees to bring suit while this case involves a dispute on whether Plaintiff suffered actual damages. The assignors in *Sprint Communications* signed an Assignment and Power of Attorney Agreement with the assignees to

"assign[], transfer[], and set over" "all rights, title and interest" in the claims. *Id.* In describing the agreements, the Supreme Court wrote: "The Agreement also 'appoints' the aggregator as the payphone operator's 'true and lawful attorney-in-fact.' The Agreement provides that the aggregator will litigate 'in the [payphone operator's] interest.' And the Agreement further stipulates that the assignment of the claims 'may not be revoked without the written consent of the [aggregator].'" *Id.* (citations omitted). Here, Plaintiff provides no such agreement. Even if LSI "is authorized to bring legal and other enforcement actions" it is unclear whether the United States, who arguably suffered the injury in the case, has assigned this claim to LSI. LSI does not provide any evidence of a contractual assignment. As Defendant stated: "[I]t is not even clear from LSI's Motion for Summary Judgment that the [] memorandum is the basis of LSI's claim that an assignment has been made." (Def.'s Resp. to Pl's Mot. at 4 (Sept. 18, 2009) [Docket Entry No. 103].) As a result, there is no evidence by which this Court grant Plaintiff's motion for summary judgment.[1]

*Ensil's Motion for Summary Judgment*

In its motion for summary judgment, Ensil contends that LSI seeks actual damages that the company has not incurred because the United States Government reimbursed it and that the government did not assign claims for damages to LSI. (Def.'s Mot. for Summ. J. at 3 (Sept. 8, 2009) [Docket Entry No. 101] (Def.'s Mot.).) Ensil states that even if the United States Government or other foreign militaries suffered losses, those entities did not bring suit. (*Id.* at 4.) Defendant argues

---

[1] Even if this case is similar to *qui tam* actions, as argued by Plaintiffs, this case involves claims for breach of contract and breach of warranty, and not a false claim or other statutorily authorized claim required for a *qui tam* action. *See* 31 U.S.C. § 3729; *Vt. Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 769 n.1, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) (describing statutory claims for *qui tam* actions).

that any agreement LSI holds with the government does not obligate LSI to reimburse the government if nothing is recovered. (*Id.* at 5.) Moreover, "[i]f damages are recovered and if LSI has an obligation and/or remits the money to the government in any event, it again has suffered no out-of-pocket loss." (*Id.*)

The memorandum from Stephen Sobieski, Chief of Contracts, to LSI does not indicate that LSI is liable for any damages to the United States Government. (Mem. (Def.'s Mot. ex. E).) The only indication that money is owed to the federal government involves a requirement that "LSI shall remit to the [U.S. Government] any damage amounts recovered . . . ." (*Id.* ¶ 2.) Even if LSI is required to remit any monies received, the memorandum does not authorize LSI to bring any claim on behalf of the United States Government nor does it impose liability upon LSI to pay the Government if it receives nothing. Based on this evidence, LSI has not established that it has suffered any damages.

## Conclusion

Plaintiff not having provided evidence to establish actual damages and there being no question as to whether the Government has fully assigned its claims to LSI, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's motion for summary judgment.

It is so ORDERED.

SIGNED this 13th day of October, 2009.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE